IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CREWS & ASSOCIATES, INC.                                    PLAINTIFF

VS.                          CIVIL ACTION NO: 5:14-cv-37-DCB-MTP

CITY OF PORT GIBSON, MISSISSIPPI;
GUYDON LOVE, LLP; EDSEL J. GUYDON;
and JWON NATHANIEL                                        DEFENDANTS

<u>ORDER DENYING MOTIONS TO DISMISS</u>

This matter is before the Court on Defendants', Guydon Love, LLP, Edsel J. Guydon, and Jwon Nathaniel, Motion to Dismiss **[docket entry no. 11]** Joint Motion to Dismiss **[docket entry no. 22]**. Having considered the motions and responses, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

I. Factual and Procedural Background

This case arises out of a contract dispute between Plaintiff Crews & Associates, Inc., ("Crews") and Defendant City of Port Gibson. Defendant Guydon Love, LLP, a Virginia law firm, was retained to represent Port Gibson in the contract negotiations. Defendant Edsel J. Guydon is employed by Guydon Love, and Defendant Jwon Nathaniel was retained as local counsel. Most of the facts concerning the agreement are irrelevant to these motions as Guydon Love, Guydon, and Nathaniel (collectively, "attorney defendants")

1

have moved to dismiss only the claims for legal malpractice.

Crews entered into a lease purchase agreement with Port Gibson to "financ[e] the purchase of new computer equipment, new police cars, water and sewer upgrades, and for paying down existing debt." Compl. ¶ 10, ECF No. 1. During negotiations, the attorney defendants "provided various legal opinions" to Port Gibson. Answer Crossclaim Counterclaim ("Crossclaim") p. 9-10, ¶¶ 2-4, ECF No. 17. These opinions included interpretations of Mississippi law relevant to the agreement. Crossclaim p. 11 ¶ 6. As part of the agreement, the attorney defendants issued an opinion letter to Crews, stating that Port Gibson's intended uses for the financing complied with Mississippi law. Compl. ¶¶ 25-26. Crews alleges that the issuance of this letter was a material condition of the agreement and that it confirmed the validity of the terms of the agreement. See Mem. Opp. p. 1, ECF No. 19; Compl. ¶ 26. Crews claims it foreseeably relied on the opinion letter to its detriment, and the attorney defendants breached a professional duty of care owed to Crews because they "failed to determine accurately whether the transaction was consistent with Mississippi law." Compl. ¶¶ 28, 72, 74-75. In August of 2013, Port Gibson filed suit in the Circuit Court of Claiborne County declaring the loan to be void and the city in default. Compl. ¶ 23.[1] Port Gibson has not made any

---

[1] Between the consummation of the agreement and the filing of the suit, Port Gibson elected a new mayor. See Compl. ¶ 18. The current mayor of Port Gibson had, during his campaign for

payments under the agreement since January of 2012.[2] Compl. ¶ 21. Port Gibson alleges that the attorney defendants misled the city and its administration about the validity of the terms of the agreement. Crossclaim p. 12 ¶ 8.

## II. Analysis

The attorney defendants have moved to dismiss both claims for legal malpractice for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). The plaintiff must plead sufficient facts so that the court may reasonably infer the defendant's liability for the alleged misconduct. Id. "[A] plaintiff armed with nothing more than conclusions cannot unlock the doors of discovery." Doe v.

---

office, expressed his opinion that the agreement was void by filing suit against the then-mayor and the City Board of Aldermen, challenging the validity of the agreement. Compl. ¶ 30.

[2] In its crossclaim, Port Gibson argues that the agreement was never consummated and is void ab initio. Crossclaim p. 10, 12 ¶¶ 6, 8. This allegation is irrelevant to the city's claim for malpractice, and the Court will ignore it in favor of finding Crews's allegation that a contract existed should be treated as true for this order. This Court's order should not be read as rendering a final decision on the validity of the Lease Purchase Agreement. However, the Court will note that Crews attached to its complaint an exhibit purporting to be the Lease Purchase Agreement signed by the then-mayor of Port Gibson and FNSB Investment, Inc., Crews's predecessor in interest. See Compl. Ex. E, p. 12, ECF No. 1-6.

Robertson, 751 F.3d 383, 393 (5th Cir. 2014) (internal quotations omitted).

To state a claim for legal malpractice, a plaintiff must plead "(1) an attorney-client relationship; (2) the attorney's negligence in handling the client's affairs; and (3) proximate cause of the injury." Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A., 100 So. 3d 420, 424 (Miss. 2012).

### A. Crews's Claim

The attorney defendants argue Crews's claim fails because Crews did not sufficiently allege the existence of an attorney-client relationship. Mem. Supp. p. 3, ECF No. 12. Crews makes three alternative arguments: (1) the complaint does sufficiently plead the existence of an attorney-client relationship, (2) such a relationship need not be shown in this case, or (3) the Court should allow Crews to amend its complaint. Mem. Opp. p. 2, 17, 18, ECF No. 19.

Taking up Crews's first argument, the Mississippi Supreme Court has held:

> An attorney-client relationship exists when:
> (1) A person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and
> (2)(a) The lawyer manifests to the person consent to do so, or (b) fails to manifest lack of consent to do so, knowing that the person reasonably relies on the lawyer to provide the services, or (c) a tribunal with power to do so appoints the lawyer to provide the services.
> As such, fee payment by the client to the attorney is not

required.

Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So. 3d 474, 485 (Miss. 2010) (citations omitted). The Mississippi Supreme Court further explained that "the existence of a professional, attorney-client relationship is fact-specific." Id., 42 So. 3d at 487 n.28. Thus, to survive the motion to dismiss, Crews must plead (1) that it made known to the attorney defendants its intent to receive legal services from the attorney defendants and (2) that either (a) the attorney defendants agreed to provide legal services or (b) the attorney defendants did not refuse to provide legal services, knowing that Crews would still rely on the attorney defendants to provide legal services.[3]

As to the first element, Crews argues that the plain language of the agreement requiring an opinion letter from the attorney defendants manifested its intent to received legal services. Mem. Opp. p. 18. The attorney defendants assert they "had neither a legal duty nor a contractual obligation to provide a legal opinion" to Crews and shared the opinion letter "'as a courtesy, with no expectation of an attorney-client relationship.'" Mem. Supp. p. 3-4 (quoting Quintairos, 100 So. 3d at 424-25).

The Fifth Circuit has referred to the elements of an attorney-

---

[3] The Court finds, and Crews does not argue, that the attorney defendants have not been appointed by a court to provide legal services to Crews. The Court's discussion below thus ignores this prong of the second element.

client relationship in Mississippi as a "simple formula," and more often than not it is. See Hopper v. Frank, 16 F.3d 92, 95 (5th Cir. 1994). Thus, little guidance has been given as to what is required to manifest the intent to receive legal services.[4] One district court has held that "[t]he relationship is not formed by passivity; rather it comes about by the actions of *both* the client and the attorney. The client must request the services of the attorney. . . ." Hood v. Cent. United Life Ins. Co., No. 2:07cv164, 2008 WL 2593787, at *1 (N.D. Miss. Jun 27, 2008). The Mississippi courts have found that an attorney-client relationship can arise when the elements are less discrete. See Seay, 42 So. 3d at 485 (finding attorney-client relationship "coexisted with [a] personal relationship" as lifelong friends based on prior conduct by the

_____

[4] The Court draws on Mississippi's unauthorized practice of law jurisprudence to define "legal services." The Mississippi Supreme Court has defined the practice of law to include:

> the drafting or selection of documents, the giving of advice in regard to them, and the using of an informed or trained discretion in the drafting of documents to meet the need of the person being served. So any exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession.

Darby v. Miss. State Bd. Of Bar Admissions, 185 So.2d 684, 687 (Miss. 1966) (emphasis added). And the Mississippi Supreme Court recently reaffirmed the Darby definition. Forbes v. St. Martin, 145 So. 3d 1184, 1196 (Miss. Ct. App. 2013) (finding the Darby definition had been reaffirmed in In re Williamson, 838 So. 2d 226, 234 (Miss. 2002)), judgment reversed on other grounds, Estate of St. Martin v. Hixon, 145 So. 3d 1124 (Miss. 2014). The opinion letters meet the above definition and, therefore, qualify as a legal service.

6

attorney: referring to plaintiff as his client in correspondence, advising plaintiff, and attending a deposition). The comments to the Third Restatement of The Law Governing Lawyers[5] provide some further insight. "A client's manifestation of intent that a lawyer provide legal services to the client may be explicit" or it "may be manifest from surrounding facts and circumstances." Third Restatement § 14, comment c (2000). The comments provide two examples that would not give rise to the attorney-client relationship: (1) "the fact of receiving some benefit of the lawyer's service, for example when the lawyer represents a co-party" and (2) when a lawyer "answer[s] a general question about the law, for instance in a purely social setting." Id. These examples are inapposite to the facts of this case.

Crews attached to its complaint copies of the agreement and three opinion letters it received from the attorney defendants. See Compl. Exs. D, E, F, and G. In ruling on a motion to dismiss, the Court "generally 'must limit itself to the contents of the

---

[5] The court in Baker Donelson quoted from a footnote in an earlier Mississippi Supreme Court case to announce the elements of an attorney-client relationship. See Baker Donelson, 42 So. 3d at 485 (quoting Singleton v. Stegall, 580 So. 2d 1242, 1244 n.2 (Miss. 1991)). The Singleton court quoted a preliminary draft of the American Law Institute's Restatement of the Law: The Law Governing Lawyers § 26. This preliminary draft has since been adopted without material change by the American Law Institute in the Third Restatement. See Restatement (Third) of Law Governing Law ("Third Restatement") § 14 (2000). Thus, this Court finds the comments to that section instructive to Mississippi's interpretation of the law.

pleadings, including attachments thereto.' The [C]ourt may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." Brand Coupon Network, LLC v. Catalina Mktg. Corp, 748 F.3d 631, 635 (5th Cir. 2014) (quoting Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000)) (footnotes omitted). Thus, the Court may consider the agreement and the opinion letters.

The agreement states, in pertinent part:

> (b) Lessee represents, and will provide an opinion of its counsel in substantially the form attached hereto to the effect that it has full power and authority to enter into this Agreement; that this Agreement has been duly authorized, executed, and delivered by Lessee, and is a valid and binding obligation of Lessee enforceable in accordance with its terms; that Lessee is a political subdivision of the State within the meaning of Section 103(a) of the Code; all requirements for execution, delivery and performance of this Agreement have been, or will be, complied with in a timely manner; and the interest on this Agreement is exempt from federal income taxes.

Compl. Ex. E p. 2, ECF No. 1-6. Prior to consummation of the agreement, Crews inquired about the legality of the agreement, prompting the inclusion of the above contract provision. Compl. ¶ 24. The Court finds that this inquiry combined with the above contract provision satisfies the first element of the test for an attorney-client relationship. Crews affirmatively sought legal services, in the form of an opinion letter about the legality of the agreement, from the attorney defendants.

As to the second element, Crews argues that the attorney defendants impliedly manifested their consent by issuing the opinion letters and "failed to manifest their lack of consent knowing that Crews would reasonably rely on the attorney defendants to provide their legal opinion." Mem. Opp. p. 18. The Court finds that the attorney defendants fulfilled the second element under either prong.[6] The comments to the Third Restatement provide that a lawyer may manifest consent in myriad ways: explicit agreement, implied by action, or through an agent with authority (apparent, express, or implied) to act for the lawyer in undertaking representation. Third Restatement § 14, comment e. It further provides that the lawyer's manifestation of intent can come before the client's and that "the acts of each often illuminate those of the other." Id. It can certainly be seen that Port Gibson acted with apparent authority to bind the attorney defendants to providing the legal opinion to Crews.

As to failure to express a lack of consent, the attorney defendants were involved in the contract negotiation, and it would strain credulity to believe they were unaware of the pertinent contract provision when they advised Port Gibson to sign the agreement. Therefore, the attorney defendants were presented with

---

[6] Because the prongs are expressed in terms of an affirmative act - expressing consent - and a negative act - not expressing lack of consent - the Court finds that the elements are not mutually exclusive.

9

an opportunity to object to providing the letter and declined to do so. As to reliance, the form letter attached to the contract concludes with the sentence: "This opinion <u>may be relied upon</u> by the addressee hereof and its successors and assignees of interests in the Agreement, but only with regard to matters specifically set forth herein." Compl. Ex. E p. 55, ECF No. 1-6 (emphasis added). Moreover, the third opinion letter issued by the attorney defendants contained an identical concluding sentence. <u>See</u> Compl. Ex. H p. 2, ECF No. 1-9. Crews was clearly meant to rely on the opinion letters. Therefore, the Court finds that Crews has pled the second element of an attorney-client relationship.

The Court's analysis is bolstered by the existence of a contract in this case. Mississippi courts have long held that attorneys owe three duties to their clients: "(a) the duty of care, (b) a duty of loyalty, and (c) duties provided by contract." <u>Singleton v. Stegall</u>, 580 So. 2d 1242, 1244 (Miss. 1991). The Mississippi Supreme Court has held that a malpractice action may lie for the lawyer's breach of those duties secured by contract.[7] <u>Id.</u>, at 1245.

Because the Court finds that Crews sufficiently pled an attorney-client relationship, the Court does not reach the question

---

[7] After some modest search, the Court is unable to find a case on this point. It appears that clients more often bring actions for breach of contract, though these three sources of duty are still good law and frequently repeated.

whether such a relationship must be pled in this cause of action. Further, the Court finds Crews's request to amend wholly unnecessary at this time.

B. Port Gibson's Claim

The attorney defendants have moved to dismiss Section III and Count II[8] of Port Gibson's crossclaim against them. They argue that Port Gibson has not put forward a legal theory to support the attorney defendants' liability. Mem. Supp. p. 5, ECF No. 23. Port Gibson argues that this Court has already determined in a prior case whether the claim for legal malpractice can survive a Rule 12 (b)(6) motion. See City of Port Gibson v. FNBS Investments, Inc., No. 5:13cv121, 2014 WL 896770, at *4 (S.D. Miss. Mar. 6, 2014). Accordingly, the Court must determine whether issue preclusion applies in this case.

Federal common law governs the preclusive effect given to issues decided by a prior federal judgment when considered by a federal court sitting in diversity. Rabo Agrifinance, Inc. v. Terra

---

[8] The Court first finds that the attorney defendants' request to dismiss Count II appears to be in error. Count II relates to damages flowing from Port Gibson's claim against the former mayor and others. See Crossclaim p. 13-17. Port Gibson's crossclaim against the attorney defendants contains its own section related to damages. See Crossclaim p. 13 ¶ 9. Further, Section three of Port Gibson's answer appears to relate exclusively to its claim for malpractice against the attorney defendants, and Port Gibson makes no other claim against them. Therefore, the Court will construe the motion as one to dismiss just the claim made against the attorney defendants.

<u>XXI, Ltd.</u>, 583 F.3d 348, 353 (5th Cir. 2009). "The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." <u>Id.</u>

> [Issue preclusion] is appropriate where four conditions are met: (i) [t]he issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (ii) [t]he issue must have been fully and vigorously litigated in the prior action; (iii) [t]he issue must have been necessary to support the judgment in the prior case; and (iv) [t]here must be no special circumstance that would render [issue preclusion] inappropriate or unfair. The fourth element, special circumstances rendering [issue preclusion] unfair, applies only to the use of offensive (non-mutual) [issue preclusion] by the plaintiff.

<u>Kariuki v. Tarango</u>, 709 F.3d 495, 506 (5th Cir. 2013) (internal quotations omitted).

The Court finds that the argument fails to meet the third element of issue preclusion: that the issue was necessary to the judgment. "If a judgment of a court of first instances is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." <u>Restatement (Second) of Judgments</u> § 27, comment i (1982). Because the Court's prior remand order found that claims had been stated against multiple in-state defendants to nullify complete diversity of the parties, the determination that a claim had been stated against one of the attorney defendants was not necessary to

the judgment. See FNBS Investments, 2014 WL 896770, at *4.
Therefore, the Court must undertake a Rule 12(b)(6) analysis of the
claim once again.

As stated above, the elements of a legal malpractice claim are
(1) an attorney-client relationship, (2) negligent conduct by the
attorney, and (3) proximate cause. Quintairos, 100 So. 3d at 424. As
to the first element, the Court finds that it has been adequately
pled. As to the second element, Port Gibson alleges that the
attorney defendants misled the city and its administration about
the legality of the terms of the agreement and did not disclose
certain conflicts of interest, violations of the duties of care and
loyalty. As to the third element, Port Gibson alleges that it is
now liable on a contract it would not otherwise have entered into.

Based on the above allegations, the Court finds that Port
Gibson has adequately stated a claim against the attorney
defendants for legal malpractice. Therefore, the joint motion to
dismiss will be denied.

## II. Order

IT IS HEREBY ORDERED that the Defendants', Guydon Love LLP,
Edsel J. Guydon, and Jwon Nathaniel, Motion to Dismiss **[docket
entry no. 11]** is DENIED.

FURTHER ORDERED that the Defendants', Guydon Love LLP, Edsel
J. Guydon, and Jwon Nathaniel, Joint Motion to Dismiss **[docket**

**entry no. 22]** is DENIED.

SO ORDERED this the 12th day of November 2014.

  /s/ David Bramlette
UNITED STATES DISTRICT JUDGE